Case number 21-7116. Melvin Brown, a felon, v. Sandra Hill, et al. Mr. Rickman for the felon, Ms. Browder for the District of Appalachia, Ms. Eric Lalloy for the Sonoma Police. Good morning, Your Honor. May it please the Court, George Rickman on behalf of Melvin Brown. This case originated because of wrongdoing by some, so others, i.e., an organization of corporates in the District of Columbia, a contractor in the District of Columbia, Menlo Health. There's a legitimate complaint that employers or other parties made false statements about Mr. Brown concerning his conduct while in the hospital facility, along with illegally obtaining medical records to facilitate his removal and involuntary commitment to seek the District of Columbia to step up to the Menlo Health System in the District of Columbia. This wrongdoing resulted in egregious harm to Mr. Brown, forced medication, and continued detention within the Menlo Health System. For all intents and purposes, the U.S. District Court found that Mr. Brown was not a state actor for the purposes of constitutional violations that resulted from these allegations. But the District Court's premise in reaching this conclusion was based on custody. Custody is not a basis for defining public function within state action, or is defined by state action. Referring to West v. Act. Before we kind of go along with some of your more substantive arguments, I mean, you realize the case has been pending since December 2013, and kind of the third dismissal from this court. So what's the best argument you would say that with respect to any equitable tolling or relation back? Well, looking at 15C, the landscape has changed since this court's opinion in Nassim Rendell-Speranz v. Nassim and Krupski v. Kostovsky. Two important factors occurred in Krupski. Krupski first altered the analysis to requiring or considering what a possible defendant knew or should have known within the tolling period. Nassim explicitly rejected that argument. When you look at the A and B analysis, Krupski says, well, if A was mistaken about B's role, or the plaintiff was mistaken between A and B's role, that would be a mistake. Nassim itself rejected that. So that underlying premise certainly changed with the opinion of Krupski. But the argument was that he was looking for his medical records, and then something prompted how he got them, but there was such a delay even then in getting the medical records. And then you also sued Somm, but not necessarily identifying specifically in the complaint in what capacity, whether it was going to be official or individual as well. Well, this has been a longstanding precedent, but you look at the progress of the litigation in determining whether a particular capacity of a defendant. I think that if you look at the complaint itself, Somm, misnamed as a particular defendant within the text of particular accounts within the complaint, of the course of events that are alleged, makes it clear that Gerlach and Don Adams, the president, the CEO of Somm, pursued their position. Okay. In fact, I think I put that up within the brief. And that's kind of the default anyway. If you don't sue them individually, specifically alleging certain actions against them, then they would default to official capacity anyway. Actually, it would probably be an easier case to prove against Gerlach and Adams. Assuming that Somm is found to be a state actor, state actors would apply official capacity, would apply under 1983 as being persons under 1983. But that being said, while some of the non-raised offenses may be available, it would probably be an easier case to prove. But Somm, but that being said, I think we argued that Pembower would apply because they had actual knowledge of what was going on. And there may have been allegations that they in some way participated in the wrongdoing. So that in itself would also help Somm. For purposes of identifying criminals. But going back to your question about... While this case offers John Doe defendants and Krupski, apparently the defendants were known to the plaintiffs. There's a split in the circuit as to whether or not Krupski altered the landscape to include John Doe defendants. Arguably because the reasoning of Krupski lends itself to the understanding that the knowledge shifts to what the defendant knew or should have known. Krupski had a different content within what you would consider a John Doe defendant. And there are also particular interests, policy interests, that are involved there. There are particular inequities involving where one plaintiff who perhaps knew of the defendant would be able to avail themselves of the victim's safety. While a defendant who did not know the name of the defendant, though is still intended to sue that defendant, if they did know, would not be able to avail themselves of the victim's safety. And that particular inequity would be addressed by permitting John Doe defendants to be included in 15C. I'll also add, regarding 15C, in the district's brief, they argued that there was no timing notice, but that was based on the actual filing of the complaint. Under 4M, actual summonses were not sent out until sometime in 1-7-2015. Therefore, there would be an affirmative notice, but under the theory articulated in the Singleton case, as to the sum of the defendant's remorse within that final date. I just wanted to make that point. Returning back to state action, the court's basic theory on state action that there was not traditional or exclusive function involving the providing of mental health services within the district. But it's been a long-standing and traditional mandate, requirement, that the district provide these particular services. It's defined in the statute, it's defined by case law, that I think pointed to the Dixon Consent Decree that was entered, that comported the district to provide particular health services. In light of that, the mandatory requirement, the court did not address the first particular obligation that were presented or provided the basis for state action. I'll try to reserve five minutes for follow-up. Okay, thank you. Good morning, may it please the court. Megan Browder on behalf of Dr. Amelia Villarooz, David Walker, and the District of Columbia, whom I'll refer to collectively as the District Appellees. Because it is undisputed that none of the District Appellees were a party to this litigation before the end of the statute of limitations period, Mr. Brown must show his entitlement to equitable tolling or that Rule 15 applies. He can do neither. First, as to equitable tolling, there's no diligence. The only thing Mr. Brown relies on in the record is his superior court suit, but he did not file that suit until June 2014, which was already outside the statute of limitations period. Second, as to extraordinary circumstances, he's waived that by not raising it below or before this court, and there's also nothing in the record to support any extraordinary circumstances. Second, as to Rule 15, Rule 15 does not apply here in this court. I know that appellant relies on Krupski, but I don't think it's necessary to go into the mistake doctrine at all to solve this case. This court can resolve it on the first prong of Rule 15C, which says that the defendant had to have notice within the Rule 4M period of the act and had to receive such notice. It's undisputed that no District Appellee received notice of this action before June 2015, when Mr. Walker was served. That's more than a year after the statute of limitations period ended. And even on the second prong, even if we set aside the mistake part of it, the defendant also had to know within the 4M period that they would have been an attended defendant here. And again, because the District did not receive such notice, none of the District Appellees would have been on notice or would have been able to know within the 4M period. If there are no questions, we would rest on our papers and ask that this court affirm the District Court's dismissal of all of the District Appellees. Thank you.  And here we would request that the court affirm, because it was appropriate to dismiss some, because they were never named as a defendant in the litigation. Through the four amended complaints, there was never issue of a summons or service on some as a party. And therefore, it was appropriate to dismiss some in its corporate capacity, as it was never named or served in the process. On the issue of state action, the fact that some, which is a housing provider that provides services under a contract with the Department of Behavioral Health, provided housing to Mr. Brown is not sufficient to establish that it was a state act. The fact that District of Columbia provides housing to individuals who receive mental health care is not sufficient to establish that any of these some employees were in fact state actors. All of the cases that are cited by Mr. Brown are distinguishable, because in those cases, not only was the state providing mental health services through its contractors, but in each of those cases, the plaintiff was in the custody and care specifically of the state. That fact is not present here, and therefore there are no facts that are sufficient to establish that some was a state actor for the purposes of 1983. And do you contest then the appellant's suggestion that this is a mandated service by the state? I do, Your Honor. I mean, there is a requirement the Department of Mental Health provides services to people who are eligible and apply for such services. But there are many people in the District of Columbia who need and have mental health care, but they're not remanded to the custody of the District of Columbia. That makes it distinguishable, because although the Department of Mental Health is established to provide those services, it's not a requirement that everyone who is eligible go then into the custody of the District. When was it established? I'm sorry? When was it established? I'm sorry, the Department of Behavioral Health? I'm sorry, I don't know the answer to that. I think the standard here involves to a degree whether something is historically been a function solely of the state. That's correct. Which is not at all the case. That's correct. If there are no other questions, we're happy to rest on our papers. Thank you. Thank you. And we've allotted two minutes for rebuttal. Thank you, Your Honor. I'm going to have to bring the mic up so I can hear you. Please. First, to address Judge Ginsburg's concerns that this is not historical within the District. This is more analogous to the West vs. Act. Where the obligation was for a particular class of persons, that being prisoners within the system. Custody was not the dispositive factor. What was dispositive was the obligation that was established within the long-standing principle of the District. Within particular, the District of Columbia. It's been more than 20, 30 years. This is quite different from Randall Baker's home where the Supreme Court kind of looked at. Are there not other institutions that perform this function? Non-public institutions? There are not. There are. But it's unlike a prison. Well, there are non-public prisons that provide functions, but there are private operating prisons that perform the same functions as state actors. They're state actors as well. So I don't think at that point that there are other non-public institutions that provide this service. In fact, some of the non-public institutions, but they're providing it within the mandate of the District of Columbia. And it's the obligation that establishes the state action. That's the premise of West v. Atkinson. And that is the premise that, well, that particularly was not addressed within HALC. HALC, in the footnote, specifically reserved on West v. Atkinson, whether or not, did not address the obligation theory of state action. I think that is very present within the District of Columbia and the history of its mental health system. It's a very defined piece of obligation. It's a defined class of obligation. I think the consent decree recognized that there may be other mental health persons who would not be put within the system because of shared numbers. But that's still required by the mandate that a particular number of beds be provided within the mental health system of the District of Columbia. And to go further, too, I'd like to address Roof 15 for the equitable tolling addressed by the District of Columbia. They claim that there was 14 months, some period of time, from the filing of the complaint before or when Mr. Brown obtained the information for the lawsuit. And his case was on appeal. So he could not have filed the case until the court set a time in order to file the second amendment. So that argument kind of begs the question. If he can't do it, then how could that help or be held against him? And to 15C, I'd just like to restate the interest of perhaps particularly with John Doe that the inequities involved between persons who would know and persons who would not know. And all of the concerns would be in the same position with regards to ability to focus. Thank you. Thank you. The case is submitted.
judges: Childs, Edwards, Ginsburg